# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

| | |
|---|---|
| QUAUNTEL SAUNDERS, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Civil Action No. 2:21-00157 |
| ) | |
| JOHN FRAME, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On March 8, 2021, Plaintiff, acting *pro se*, filed his Application to Proceed Without Prepayment of Fees and Costs and his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Document Nos. 1 and 3.) In his Complaint, Plaintiff names the following as Defendants: (1) John Frame, Associate Superintendent of Mt. Olive Correctional Complex ("MOCC"); (2) Donald Ames, Superintendent of MOCC; (3) Betsy Jividen, Commissioner; (4) John Young, Investigator; (5) Jarrod Wilson, Correctional Hearing Officer; (6) Brenda Ward, Administrative Segregation Committee; (7) David McKenny, Administrative Segregation Committee; (8) Alexander Hendrix, Bailiff; and (8) Capt. Toney. (Document No. 3.) First, Plaintiff alleges that his due process rights were violated during disciplinary proceedings at MOCC. (Id., pp. 8 - 10.) Plaintiff explains on or about November 19, 2020, an inmate was assaulted and killed. (Id., p. 8.) Plaintiff acknowledges that several inmates were sent to segregation on November 23, 2020, for obstructing but were released from segregation after 30 days. (Id.) Plaintiff states that approximately "2 or 3 weeks after the murder happened, [Plaintiff] was asked

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

about what happen the night of the murder" by Investigator Young. (Id.) Plaintiff contends that he responded "I was outside when it happened." (Id.) Plaintiff explains that Investigator Young then inquired why Plaintiff was outside, and Plaintiff stated "I have class during our rec time per Unit Team & Yard Guard [so] I'm allowed to rec with workers to get my rec time." (Id.) Plaintiff complains that on December 29, 2020, approximately a week or two after he talked to Investigator Young, Plaintiff was charged with Obstructing in violation of 1.16.[2] (Id.) Plaintiff acknowledges that he had a hearing on January 5, 2021. (Id.) Plaintiff states that a few days prior to the hearing, he informed Bailiff Alexander Hendrix that he needed a legal representative, inmate witnesses, and video footage from the night of the murder. (Id.) Plaintiff alleges that prior to the hearing, Bailiff Hendrix informed Plaintiff that he was not allowed to the use the two inmate witnesses he had requested. (Id.) Therefore, Plaintiff states that when Hearing Officer Wilson inquired if Plaintiff "needed witnesses, Plaintiff said 'no' because the Bailiff had already told Plaintiff he could not have those witnesses." (Id.) Plaintiff complains that he was denied video footage and the right to call witnesses, which violated his right to due process. (Id.) Plaintiff further asserts that Investigator Young was unresponsive to questions asked by Plaintiff's legal representative. (Id.) Plaintiff complains that Hearing Officer Wilson found Plaintiff guilty of obstruction without viewing the video footage or interviewing Plaintiff's witnesses. (Id.) Plaintiff concludes he was

---

[2] By Incident Report dated December 30, 2020, Petitioner was charged with Obstructing in violation of 1.16. (Document No. 3, p. 4.) In support, Investigator Young stated as follows:
> On Tuesday, 29 December 2020, at approximately 1:00 p.m., this Investigator John C. Young concluded the investigation into the death of Inmate Brian Gifft OID # 3488420. During the course of this investigation this Investigator did determine that Inmate Quauntel Saunders OID # 3552727 did attempt to distract Correctional Office II James Jones to the point he could not properly complete his job duties during the assault on Inmate Gift OID 3488420. Due to the actions of Inmate Saunders OID 3552727 this Investigator is charging him with Policy Directive 325.00 rule 1.16 Obstructing.

denied a fair hearing and none of the named Defendants took any action to remedy the situation. (Id.) Plaintiff alleges that the filed appeals to Superintendent Ames and Commissioner Jividen, but his "appeals were denied without clear explanation for why they were denied." (Id.)

Second, Plaintiff complains that his due process rights were violated when Plaintiff received a Notice of Assignment resulting in his placement in administrative segregation. (Id., pp. 11 - 15.) Plaintiff states that on January 27, 2021, a day before his disciplinary segregation was to end, Plaintiff received the Notice of Assignment. (Id.) Plaintiff claims he was denied his right to a seven day continuance of the hearing concerning his Notice of Assignment. (Id.) Plaintiff further states that he was denied the right to call witnesses at his Administrative Segregation Hearing on January 29, 2021. (Id.) Plaintiff argues that the Committee incorrectly determined that because "Plaintiff went past the officer's desk, that [Plaintiff] attempted to distract the officer when [he] walked by the desk." (Id., p. 12.) Plaintiff asserts this was insufficient evidence of obstruction. (Id.) Plaintiff complains he is assigned to administrative segregation for 340 days, which has caused Plaintiff atypical and significant hardship. (Id.) In support, Plaintiff complains of the following: (1) He is required to undergo a strip search every time he leaves his cell; and (2) "Plaintiff is only allowed rec time to use the telephone at 1, 2, or 7 am." (Id., p. 13.) Plaintiff complains that inmates in general population are not required to endure the foregoing. (Id.) Plaintiff further concludes that if he had been provided due process regarding his disciplinary proceedings, he would not have been subjected to placement in administrative segregation. (Id.) Plaintiff requests declarative, injunctive, and monetary relief.[3] (Id., pp. 4 – 5.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Detention Report"

---

[3] Petitioner asserted similar allegations in *Saunders v. Moore*, Civil Action No. 5:21-cv-00080 (S.D.W.Va. Sep. 28, 2021).

dated December 29, 2020 (Document No. 3-1, p. 1.); (2) A copy of Superintendent Ames' "Discipline Appeal Decision" dated January 19, 2021 (Id., p. 2.); (3) A copy of Superintendent Ames' Memorandum dated January 11, 2021 (Id., p. 3.); (4) A copy of the "Disciplinary Incident Report" dated December 30, 2020 (Id., p. 4.); (5) A copy of the "Hearing Report" (Id., pp. 5 – 6.); (6) A copy of Petitioner's Appeal to Superintendent Ames (Id., pp. 7 – 9.); (7) A copy of the "Notice of Assignment to Detention Custody" dated January 27, 2021 (Id., p. 10.); (8) A copy of the "Administrative Segregation Initial Hearing Recommendation" (Id., p. 11.); (9) A copy of the "Warden's Review and Decision of Administrative Segregation Committee's Initial Hearing Recommendations" (Id., p. 12.); (10) A copy of Petitioner's appeal regarding his placement in administrative segregation (Id., pp. 13 - 17.); (11) A copy of Petitioner's grievance dated December 29, 2020 (Id., pp. 18 - 19.); (12) A copy of Petitioner's grievance dated January 11, 2020 (Id., p. 20.); (13) A copy of Petitioner's grievance dated November 13, 2021 (Id., p. 21.); (14) A copy of the Commissioner's response regarding the viewing of video footage (Id., p. 22.); (15) A copy of Associate Superintendent Frame's response regarding the "Rule Violation" dated January 27, 2021 (Id., p. 23.); and (16) A copy of a letter from Petitioner to Commissioner Jividen time stamped January 6, 2021 (Id., pp. 24 – 26.).

## **THE STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This screening is done prior to consideration of an Application

to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the

requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived her of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

In his Complaint, Plaintiff alleges a violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants violated his due process rights under the Fourteenth Amendment. First, Plaintiff alleges that Defendants Young, Wilson, Frame, Ames, Jividen, Hendrix, and Toney violated Plaintiff's due process right during his disciplinary hearing. Plaintiff argues that there was insufficient evidence to support the Incident Report prepared by Investigator Young. Plaintiff contends that Hearing Officer Wilson failed to allow Plaintiff to

6

present witnesses, view video footage, or conduct an adequate cross-examination of Investigator Young. Plaintiff complains that Hearing Officer Wilson found Plaintiff guilty of Obstruction in violation of 1.16 and sanctioned Plaintiff to 30-days punitive segregation. Plaintiff, however, does not allege that he lost any good time credit as a result of his disciplinary conviction.[4] Plaintiff concludes Defendants Frame, Ames, Jividen, Toney, and Hendrix were aware of the foregoing misconduct and failed to take corrective action. Second, Plaintiff argues that his due process rights were violated during his administrative segregation hearing when Defendants Ward and McKinney failed to grant Plaintiff a seven day continuance and refused to allow Plaintiff to call witnesses. Finally, Plaintiff alleges that Defendant Ames and Jividen violated his due process rights by denying his appeal concerning his disciplinary conviction and Defendant Ames adopting the Administrative Segregation Committee's recommendation that Plaintiff be placed in administrative segregation.[5]

---

[4] If Plaintiff's disciplinary proceedings would have involved the loss of good time credit, Plaintiff would have been entitled to the procedures set forth in *Wolff*. In *Wolff*, however, the Supreme Court stated that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have lawfully committed. *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975. The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* Thus, "*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." *Johnson v. Warden, FCI Williamsburg*, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), *aff'd* 597 Fed.Appx. 161 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). To the extent Plaintiff is claiming his disciplinary conviction resulted in the loss of good time credit and resulted in a violation in his due process rights, such a claim must first be pursued pursuant to 28 U.S.C. § 2241. A Section 1983 action seeking monetary damages for Plaintiff's allegedly invalid disciplinary conviction would be precluded by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) unless Plaintiff successfully challenged his disciplinary conviction in a *habeas* proceeding.

[5] In addition, the undersigned further finds that the dismissal of a defendant is appropriate where

Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct.

---

the defendant's sole involvement in an action is related to the administrative remedy process. *See Fellove v. Heady*, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); *Mabry v. Ramirez*, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); *Paige v. Kupec*, 2003 WL 23274357 *1 (D.Md. March 31, 2003), *aff'd*, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Plaintiff's claims against Defendant Ames and Jividen are based solely upon Defendants Ames and Jividen's involvement in the administrative remedy process.

8

2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions of his detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted); see McNeill v. Currie, 84 Fed.Appx. 276, 277 (4th Cir. 2003); also see Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985)(When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized.); Smith v. Deemer, 641 Fed.Appx. 865,868 (11th Cir. 2016)(citing Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (*Wolff* sets forth procedures that must accompany disciplinary hearings when there is a loss of good time credit. When a prisoner has not lost any good-time credit, *Wolff* does not apply); Ordaz v. Lynaugh, 20 F.3d 1171 (5th Cir. 1994)("*Wolff* . . . does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."); Annabel v. Frost, 2015 WL 1322306, * 8 (W.D.Ky. June 14, 2016)("A prison inmate has a liberty interest in disciplinary proceedings if he or she faces a sanction that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incident of prison life."). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

      First, there is no allegation or indication that the conditions Plaintiff's detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause. Next, the undersigned considers whether Plaintiff has established a protected liberty

interest. "Without a protected liberty or property interest, there can be no federal procedural due process claim." Experimental Holding, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007)(citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); also see Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)("We need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty interest"). In the instant case, Plaintiff did not lose any good time credit as a result of his disciplinary charges.[6] Plaintiff, however, alleges that he had a liberty interest concerning his administrative segregation hearing based upon Policy Directive 326.01, concerning his right to a continuance and call witnesses.[7] Prison staff's failure to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. Riccio v.

---

[6] Plaintiff clearly received all of the minimum due process safeguards set forth in *Wolff* during his disciplinary process. The record reveals that Plaintiff received written notice (December 30, 2020) of the charges at least 24 hours before the Disciplinary Hearing (January 5, 2021). (Document No. 3-1, pp. 4 - 6.) Plaintiff represented by an inmate representative and was presented the opportunity to present evidence and witnesses in his defense. (*Id.*) In his Complaint, Plaintiff acknowledges he informed the Hearing Officer that he did not wish to call witnesses because he had already been notified that the inmate witnesses he wished to call were prohibited due to security concerns. (Document No. 3.) Finally, Plaintiff received a written statement of the evidence relied upon and the reasons for the disciplinary action. (Document No. 3-1, pp. 5 - 6.) Petitioner was sanctioned to 30 days punitive segregation and 30 days loss of privileges with the exception of library books and phone privileges. (*Id.*, p. 5.)

[7] WVDCR Policy Directive 326.01 governs assignment to administrative segregation. (See Case No. 2:21-cv-00260, Document No. 12-2.) Under this Directive, an inmate is notified in writing (Notice of Assignment) that he is being considered for placement in administrative segregation and the basis for this designation. The Directive requires a hearing in front of the Administrative Segregation Committee ("ASC") within 48-72 hours from the time the inmate was served with the Notice of Assignment. This time period *may* be extended by approval of the Administrative Segregation Chairperson either for administrative reasons or at the request of the inmate. The inmate's request must be submitted in writing within twenty-four (24) hours of being served with the Notice of Assignment. The inmate is also afforded the opportunity to call witnesses subject to prior approval of the Committee Chairperson. *The Chairperson may refuse a witness if a legitime threat to security exists and/or if the testimony they are going to provide is redundant or irrelevant.*

County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)(If the state law grants more procedural rights than the Constitution requires, a State's failure to abide by that law is not a federal due process issue); Donohue v. Diggs, 2011 WL 795889, * 3 (W.D.Va. March 1, 2011)("[A] state's failure to abide by its own procedural regulations is not a federal due process issue and is, therefore, not actionable under § 1983."). Accordingly, the undersigned finds that Plaintiff's reliance upon Policy Directive 326.01 to establish a protected liberty interest is without merit.[8]

Finally, the undersigned will consider whether Plaintiff can establish that the conditions of confinement constitute atypical and significant hardship in relation to the ordinary incidents of prison life. A "fact specific" comparative exercise is required when determining whether confinement conditions are atypical and substantially harsh "in relation to the ordinarily incidents of prison life." Id. In Prieto, the Fourth Circuit determined that the Sandin standard contains two parts: (1) First, the Court must determine what constitutes the "ordinary incidents of prison life" for this particular inmate; and (2) Second, with that baseline established, the Court must determine whether the prison conditions impose atypical and substantial hardship in relation to that norm. Prieto, 780 F.3d at 253-54. Although general prison population is not always the basis for comparison, "general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." Incumaa, 791 F.3d at 527("[T]he 'baseline for atypicality' may shift depending on the 'prisoner's conviction and sentence.'")(citing Prieto, 780 F.3d at 253).

---

[8] Even where a state statute or policy may create a liberty interest, the denial of such an interest must "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" for the liberty interest to warrant the protection of the Due Process Clause. See *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015)(citing *Sandin*, 515 U.S. 481-82, 115 S.Ct. 2293).

In the instant case, the undersigned finds that general population is the appropriate baseline as Plaintiff was in general population before being placed in punitive and administrative segregation. Using general population as the baseline, the undersigned finds that Petitioner fails to allege conditions of confinement in segregation that satisfy the standard set forth in Sandin. In Beverati, the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

Beverati, 120 F.3d at 502. In contrast, the Supreme Court in Wilkinson determined that the following conditions at a supermax facility imposed an atypical and significant hardship under any plausible baseline:

> . . . almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

Wilkinson, 545 U.S. at 223-24, 125 S.Ct. at 2394-95.

Although Petitioner appears to challenge the appropriateness for his placement in

segregation, he cannot establish that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in general population. Petitioner concludes that his mere placement in segregation constitutes an atypical and significant hardship. Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. See Beverati, 120 F.3d at 502. The length of time that segregation is imposed is a factor which Courts must consider in determining whether conditions are significant and atypical. See Wilkinson, 545 U.S. at 224, 125 S.Ct. at 2394-95; Tellier v. Fields, 280 F.3d 69, 80 (2nd Cir. 2000)(finding an inmate's confinement in segregation for 514 days without having a hearing resulted in confinement that was atypical and significant). In the instant case, Plaintiff's segregation was not for an indefinite period and there is no allegation his confinement in segregation had a collateral consequence on his sentence. Plaintiff was placed in punitive segregation for 30 days and administrative segregation for 340 days, which is not such a prolonged period as to constitute a significant and atypical hardship. See Wilkerson v. Goodwin, 774 F.3d 845, 855 (5th Cir. 2014)(citing cases)("[T]he duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years."). Plaintiff indicates that being subjected to strip searches and more restrictive telephone access are atypical conditions of his confinement in segregation and created a significant hardship as compared to ordinary prison life in general population. The mere fact that Plaintiff experienced more restrictive conditions in administrative segregation than inmates in general population, does not render his confinement as an atypical and significant hardship. "General population inmates can also expect cell and strip searches,[9] temporary housing in segregation under similar

---

[9] In light of legitimate security concerns, strip searches in the presence of other inmates and staff are not per se constitutionally defective. *Fillmore v. Page*, 358 F.3d 496, 505–6 (7th

restrictions, and limited access to property and the public." Hubbert v. Washington, 2017 WL 1091943, * 6 (W.D.Va. March 22, 2017); Patterson v. Gladhill, 2015 WL 1186575, fn. 14 (D.Md. March 13, 2015)("The strip searches which Plaintiff complains of do not rise to a constitutional violation as they are not an atypical and significant hardship even if the court were to assume that Plaintiff was in the view of female officers during the alleged searches.") Additionally, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship. To the extent that Plaintiff alleges a liberty interest in retaining all privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in

---

Cir.2004)(discrete and expeditious strip search not unconstitutional because it is videotaped); *Elliott v. Lynn,* 38 F.3d 188 (5th Cir.1994)(visual body cavity search conducted in presence of other inmates and correctional staff reasonable in light of legitimate security concerns); *Franklin v. Lockhart,* 883 F.2d 654 (8th Cir.1989)(strip search of inmates in segregation in view of other inmates justified in light of legitimate security concerns); *Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir.1988)(strip search in hallway reasonable in view of legitimate security concerns are a regular part of legitimate prison security and are not per se constitutionally defective). The Fourth Circuit has held that strip searches of convicted persons do not amount to a *per se* violation of privacy rights, as long as the genitals of the persons being searched are not involuntarily exposed to members of the opposite sex. *See Lee v. Downs,* 641 F.2d 1117 (4th Cir.1981).

relation to the ordinary incidents of prison life).

Finally, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest). Since the facts underlying Plaintiff's Complaint are insufficient to establish a protected liberty interest under the Due Process Clause, the undersigned finds it unnecessary to consider what process was due to Petitioner. See Wilkinson, 545 U.S. at 221, 125 S.Ct. at 2393("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . ."); Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. March 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned respectfully recommends that Plaintiff's Complaint be dismissed for failure to state a cognizable claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1), **DISMISS** Plaintiff's Complaint (Document No. 3), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: August 22, 2023.



Omar J. Aboulhosn
United States Magistrate Judge